**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**KENNETH CHARLES EVANS,**

      **Plaintiff,**

**v.**                                                                    **Case No.: 2:18-cv-01539**

**ANDREW M. SAUL,
Commissioner of the
Social Security Administration,[1]**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

      This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Brief in Support of Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 10, 11).

---

[1] Pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the current Commissioner of the Social Security Administration, Andrew M. Saul, is substituted for former Acting Commissioner, Nancy A. Berryhill, as Defendant in this action.

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

In January 2015, Plaintiff Kenneth Charles Evans ("Claimant"), applied for DIB, alleging a disability onset date of August 23, 2013 due to "left knee injury, high blood pressure, enlarged heart, anxiety, high cholesterol, and arthritis in knees." (Tr. at 104, 201-02, 225). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. at 104, 162-66, 168-70). Claimant also filed an SSI application that was given a protective filing date that corresponded to Claimant's DIB application. (Tr. at 104). Claimant filed a request for an administrative hearing, which was held on July 17, 2017 before the Honorable William R. Paxton, Administrative Law Judge (the "ALJ"). (Tr. at 557-79). By written decision dated August 16, 2017, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 101-12). The ALJ's decision became the final decision of the Commissioner on October 26, 2018 when the Appeals Council denied Claimant's request for review. (Tr. 6-10).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9). Claimant filed a Brief in Support of Motion for Judgment on the Pleadings and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a reply. (ECF Nos. 10, 11, 14). Consequently, the matter is fully briefed and ready for

resolution.

## II.    <u>Claimant's Background</u>

Claimant was 55 years old on his alleged onset date and 58 years old on the date of the ALJ's decision. (Tr. at 562). He completed high school, as well as some college courses, and he previously worked as a security guard. (Tr. at 562-63, 576-77). Claimant understands, writes, and speaks English. (Tr. at 224).

## III.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

3

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If the ALJ finds that an impairment exists, the ALJ documents the findings and proceeds with analysis, but if the ALJ does not find that a medically determinable mental impairment exists the special technique concludes. *Id.* §§

404.1520a(b)-(e), 416.920a(b)-(e).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2013. (Tr. at 106, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since August 23, 2013, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: chronic left knee problems status post anterior cruciate ligament reconstruction, degenerative disc disease, hypertension, enlarged heart, obesity, arthritis of the right knee, and left shoulder impingement syndrome status post acromioplasty with bursectomy. (*Id.*, Finding No. 3). The ALJ considered Claimant's reported diabetes mellitus, foot problems, and sleep apnea, but found the impairments to be non-severe. (Tr. at 107). Regarding mental impairments, the ALJ noted the lack of mental health evidence prior to Claimant's date last insured, finding that the record did not contain any current evidence of treatment or a diagnosis of a mental health condition. (*Id.*).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 107-08, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, vibrations, and hazards.

(Tr. at 108-11, Finding No. 5). At the fourth step, the ALJ determined with the assistance

of a vocational expert ("VE") that Claimant could perform his past relevant work as a security guard. (Tr. at 111-12, Finding No. 6). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 112, Finding No. 7).

## IV.   <u>Claimant's Challenge to the Commissioner's Decision</u>

Claimant asserts a single challenge to the Commissioner's decision. He contends that the ALJ failed to comply with Social Security Ruling ("SSR") 82-62 in determining that Claimant could return to his past relevant work as a security guard. (ECF No. 10 at 5). Claimant notes that the ALJ restricted his RFC to include no concentrated exposure to extreme cold and extreme heat, yet the ALJ concluded that Claimant could return to work as a security guard, although the position required frequent exposure to weather conditions. (*Id.* at 6). Claimant readily concedes that the terms "extreme cold" and "extreme heat" are defined as non-weather related conditions in the Dictionary of Occupational Titles ("DOT") and under Agency policy. (*Id.*). However, Claimant believes that the ALJ intended to impose limitations for weather-related temperature extremes in the RFC, because the ALJ mentioned Claimant's knee and left shoulder impairments. (*Id.*). Claimant further argues that the ALJ should have asked the VE how a person working as a security guard could avoid concentrated exposure to extreme heat and extreme cold when the position required the person to be frequently exposed to weather conditions, which Claimant posits "legitimately would include temperature extremes." (*Id.* at 6-7). Claimant contends that an apparent conflict existed between the ALJ's hypothetical and the VE's description of the work, and the ALJ failed to resolve the conflict, as was required by SSR 00-4p. (*Id.* at 7). Claimant analogizes this matter to *Koch v. Colvin*, No. 2:13-CV-6780, 2014 WL 2589590 (S.D.W. Va. June 10, 2014), a case which

6

the Court remanded due to inadequate explanation for the step four finding. Claimant emphasizes that the step four decision was critical in his case because Medical-Vocational Rule 202.06 would have directed a finding of disability if Claimant was unable to return to his past relevant work. (*Id*. at 7-8).

In response to Claimant's challenge, the Commissioner asserts that Claimant is manufacturing a conflict that does not exist. (ECF No. 11 at 7). The Commissioner points out that the relevant law explicitly delineates between temperature extremes and weather conditions, a distinction which Claimant admits. Moreover, the Commissioner notes, the position of security guard does not require exposure to extreme cold or extreme heat, which are the environmental limitations in the RFC. (*Id*. at 7-8). The Commissioner argues that the ALJ did not discern a weather-related limitation; thus, Claimant's effort to create an additional RFC limitation based on what he believes the ALJ "intended" is nothing more than pure speculation—a conclusion unmoored from any findings in the ALJ's decision and any evidence in the record. (*Id*. at 8-9).

In his reply to the Commissioner's response, Claimant contends that the Commissioner "is unable to cite to any evidence that definitely confirmed the ALJ intended to limit [Claimant] to temperature extremes that were nonweather-related." (ECF No. 14 at 1-2). Claimant states that the ALJ had a duty to provide a sufficient explanation for the RFC limitations so that a reviewing court could determine if the decision is supported by substantial evidence. In Claimant's view, it is impossible to determine whether the ALJ meant to assess a non-weather related RFC limitation.

## V.     **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The information that is most pertinent to Claimant's challenge is summarized as follows:

7

### A. Treatment Records

On August 29, 2012, Claimant complained of pain and weakness in his left knee. (Tr. at 330). X-rays showed hardware from his prior ACL surgery, but Claimant otherwise only had "some mild osteoarthritis." (*Id.*).

On February 15, 2013, Claimant presented to the Emergency Department at Logan Regional Medical Center, complaining of dizziness and lightheadedness. (Tr. at 320). His blood pressure was 130/80, but a CT scan of his head, chest x-ray, and EKG did not indicate any issues. (*Id.*). Claimant was diagnosed with dizziness and vertigo and was discharged the following day. (Tr. at 322).

On August 15, 2013, Claimant complained of bilateral knee pain. The x-rays of his left knee again showed postoperative changes and minimal degenerative changes. (Tr. at 359). The x-rays of his right knee showed minimal spurring and no significant joint space narrowing. (Tr. at 360).

On August 22, 2013, Claimant presented to the Emergency Department at Logan Regional Medical Center, this time reporting chest pain. (Tr. at 332). His blood pressure was determined to be uncontrolled, which prompted adjustment to his medications. (Tr. at 342). Claimant was discharged the same day that he arrived, and he was advised to follow up with a cardiologist on an outpatient basis. (*Id.*).

On September 26, 2013, Claimant reported ongoing bilateral knee pain to his primary care provider, Derek Harman, D.O., who prescribed Mobic. (Tr. at 298-99). The following month, on November 1, 2014, Claimant again presented to the Emergency Department at Logan Regional Medical Center. He stated that he woke up "feeling like he was choking" with some shortness of breath. (Tr. at 374). Claimant's chest x-ray indicated that his lungs were clear with no effusion. (Tr. at 377). He was diagnosed with acute

8

bronchitis, prescribed medication, and discharged the same day. (Tr. at 373).

On July 6, 2015, x-rays were taken of Claimant's left shoulder due to complaints of pain. (Tr. at 401). However, the study was negative, as there were no bone or joint abnormalities, and Claimant's soft tissues appeared normal. (*Id.*). The next month, on August 13, 2015, Claimant saw cardiologist, Ashu Dhanjal, M.D. Claimant denied having any heart palpitations, chest pain, or shortness of breath, and stated that his blood pressure was better controlled. (Tr. at 439). Although Claimant's EKG showed a right bundle branch block (RBBB), Dr. Dhanjal noted that Claimant's hypertension and palpitations were under adequate control, so he renewed Claimant's prescriptions. (Tr. at 440). Dr. Dhanjal also continued Claimant on medication for dyslipidemia. (*Id.*).

On September 24, 2015, Claimant presented to the Emergency Department at Logan Regional Medical Center, stating that he was experiencing shortness of breath with light activity. (Tr. at 384). Claimant was again diagnosed with bronchitis, prescribed medication, and discharged the same day. (Tr. at 387).

On November 10, 2015, Claimant's orthopedic surgeon, Robert McCleary, D.O., performed a left knee arthroscopy with partial medial meniscectomy to remove the hardware from Claimant's prior knee surgery due to "mechanical complication of orthopedic device with internal derangement of the left knee." (Tr. at 410, 421-22). Claimant confirmed that the surgery resolved his medial knee pain and stated that he felt "excellent." (Tr. at 410-11).

Claimant followed up with Dr. McCleary six days later, on November 16, 2015, regarding his left shoulder. (Tr. at 415). Claimant stated that he felt no improvement in his left shoulder impingement syndrome after taking Naprosyn and completing more than six weeks of physical therapy. (Tr. at 414). Dr. McCleary referred Claimant for an

MRI. (Tr. at 415). On November 20, 2015, Claimant saw Dr. Harman, who prescribed insulin to treat Claimant's diabetes mellitus. (Tr. at 412-13).

The left shoulder MRI that Dr. McCleary recommended was performed on December 10, 2015. There was no evidence of a rotator cuff tear, but Claimant had a questionable previous middle glenohumeral ligament injury. (Tr. at 417). Claimant saw Dr. McCleary the following day for follow-up regarding his left knee surgery. The surgical area was healing; he still felt "excellent"; and he was instructed to continue physical therapy and return to Dr. McCleary if needed. (Tr. at 411). When Claimant saw Dr. McCleary one week later, on December 18, 2015, regarding his left shoulder impingement syndrome, Claimant reported that he still felt no improvement from medication and physical therapy, and his range of motion was restricted in his left shoulder. (Tr. at 461-62). Dr. McCleary recommended proceeding with surgery. (Tr. at 462).

On January 4, 2016, Claimant had a chest x-ray to evaluate his hypertension in preparation for his upcoming surgery to remove a painful cyst from his right foot. (Tr. at 430). The x-ray showed no acute cardiopulmonary process. (Tr. at 430). The fibrolipoma cyst was removed from Claimant's right foot on January 29, 2016. (Tr. at 428). On March 1, 2016, Claimant saw Jamie Hall Jasper, DPM, because he was still having some foot pain after the cyst removal, although it was improving. (Tr. at 445). Claimant was given an injection for right styloid bursitis. (Tr. at 447).

Claimant followed up with Dr. Dhanjal on March 24, 2016 concerning heart palpitations. (Tr. at 435). Dr. Dhanjal ordered an EKG, which again showed a RBBB. (Tr. at 437). Claimant's blood pressure was noted to be high at 171/105, and his dosage of hydralazine was increased. (Tr. at 436-37). Claimant's dyslipidemia was under good control, he was continued on his other medications, and he was scheduled to return for

follow up in six months. (Tr. at 437).

On May 31, 2016, Dr. McCleary performed acromioplasty with bursectomy on Claimant's left shoulder to relieve Claimant's left shoulder impingement syndrome. (Tr. at 454). When Claimant was reevaluated by Dr. McCleary on June 15, 2016, he felt improved and was participating in physical therapy. (Tr. at 458).

On September 7, 2016, Claimant again saw Dr. Dhanjal. Claimant's blood pressure was still elevated, and his medication was adjusted. (Tr. at 481). Claimant was continued on his other medications, and Dr. Dhanjal referred Claimant for a sleep study to evaluate possible sleep apnea. (*Id.*).

On August 4, 2018, Claimant presented to the Emergency Department at Logan Regional Medical Center, stating that he passed out at Kroger one hour earlier and fell on his right shoulder and left knee. (Tr. at 66). Claimant was diagnosed with syncope, but his neurological and diagnostic testing results were normal. There was no evidence that he had suffered a stroke. (Tr. at 15, 26, 43). X-rays of Claimant's left knee showed his prior ACL repair and mild degenerative change, but no fracture or dislocation. (Tr. at 83). During his follow-up examinations that month, Claimant was noted to be doing well with no further syncopal episodes. (Tr. at 15, 26).

### B. Evaluations and Opinions

On May 22, 2015, state agency physician Narendra Parikshak, M.D., determined that there was insufficient evidence for her to provide an RFC opinion before Claimant's date last insured on December 31, 2013, because the medical record from 2013 did not suggest any significant limitations. (Tr. at 136). Dr. Parikshak added that, although Claimant had x-rays during that time period, the records did not note his range of motion, gait, or strength. (*Id.*). On July 17, 2015, Rogelio Lim, M.D., agreed that there was

11

insufficient evidence to assess Claimant's RFC prior to his date last insured. (Tr. at 155).

### C. Prior ALJ Decision

In 2011, Claimant applied for DIB, alleging that he was disabled since February 14, 2009 due to pain in his left knee and back; fatigue; and problems with his memory, concentration, and ability to understand information. (Tr. at 116, 121). He amended his alleged onset date to October 24, 2011. (Tr. at 116). In a decision dated August 22, 2013, the Honorable Sabrina M. Tilley, Administrative Law Judge ("ALJ Tilley"), found that Claimant could perform a limited range of light work that avoided, *inter alia*, concentrated exposure to extreme cold and extreme heat. (Tr. at 120). ALJ Tilley determined that Claimant could return to his past relevant work as a security guard and thus concluded that Claimant was not disabled under the Social Security Act. (Tr. at 123-24).

### D. Claimant's Testimony

Claimant testified at his administrative hearing on July 17, 2017. He stated that he worked for approximately 15 years as a security guard, but he stopped working in February 2009 because his contract ended. (Tr. at 563). He testified that he got to the point where he could no longer do the job because of knee pain. (*Id.*). Claimant related that his pain level was still "about the same" since his November 2015 knee surgery, which removed some of the scar tissue and outdated hardware. (Tr. at 568). Claimant testified that he also continued to have issues with his left shoulder, right foot, diabetes, high blood pressure, and depression. (Tr. at 571-74).

### VI.    <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial

evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII.   <u>Discussion</u>

Claimant states that his only challenge to the Commissioner's decision is whether the ALJ complied with SSR 82-62 before finding that Claimant could return to his past relevant work as a security guard at step four of the sequential evaluation. (ECF No. 10 at 4). However, Claimant indicates in his brief that the ALJ did not clarify the "vague" RFC

limitations that he could not withstand concentrated exposure to extreme heat or cold, and Claimant's reply further elaborates that the ALJ did not provide an adequate explanation for those RFC limitations. (ECF Nos. 10 at 7, 14 at 2). Therefore, it appears that Claimant challenges the ALJ's RFC finding regarding the extreme heat and cold environmental limitations, as well as the ALJ's step four conclusion that Claimant could return to his past relevant work. The undersigned addresses below both arguments, in turn.

### A. RFC

Claimant contends that the ALJ's decision was so vague that it is impossible to discern whether the ALJ intended to impose temperature limitations in Claimant's RFC that were weather related or non-weather related. (ECF No. 14 at 2). SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is

capable of doing the full range of work contemplated by the exertional level." *Id.* Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

In this case, the ALJ discussed the relevant evidence concerning Claimant's impairments and ultimately concluded that Claimant could perform a limited range of light work that involved no concentrated exposure to extreme cold and extreme heat. (Tr. at 108-110). The ALJ indicated that he gave great weight to ALJ Tilley's August 2013 RFC finding that limited Claimant to no concentrated exposure to extreme heat and extreme cold. (Tr. at 111); *see* (Tr. at 120). While the ALJ's foregoing discussion of the environmental limitation is concise, there is no contradictory evidence in the record or

15

inadequacies in the decision to preclude meaningful review. Moreover, there is not a scintilla of evidence to suggest more restrictive environmental limitations than the ALJ assessed. To the contrary, the ALJ agreed with the only RFC opinion in the record, which was ALJ Tilley's assessment. Claimant does not point to, nor are there, any clinical records, diagnostic test results, testimony, or opinions that the ALJ overlooked in assessing Claimant's environmental limitations. The basis for the RFC limitations is apparent from the decision, and there is no conflicting evidence suggesting greater limitations.

Claimant speculates without any foundation that the ALJ possibly meant to limit his exposure to weather conditions, a finding which would have impacted his ability to return to his past relevant employment as a security guard. However, there is nothing in the record or in the ALJ's decision to generate such a conclusion. As Claimant acknowledges, the applicable law expressly provides that RFC limitations regarding extreme heat or cold refer to environmental conditions that are distinct from weather-related conditions. DOT 372.667-034, 1991 WL 673100 (stating that the security guard position involves frequent exposure to weather, but no exposure to extreme heat or cold); Program Operations Manual Systems (POMS) DI 25001.001(A)(22) (stating that exposure to weather means exposure to outside atmospheric conditions), DI 25001.001(A)(26) (stating that exposure to extreme cold means exposure to non-weather related cold temperatures), DI 25001.001(A)(27) (stating that exposure to extreme heat means exposure to non-weather related hot temperatures).

Under the law, an entirely different RFC limitation would have been assessed to limit Claimant's exposure to weather, if the ALJ had intended to do so. However, the ALJ's decision does not suggest that the ALJ meant to include such limitation, and there is not

a single medical record or opinion to indicate that a weather-related limitation was reasonably implicated in this matter. It certainly defies logic to argue, as Claimant does here, that a case should be remanded based on completely unsupported speculation that the ALJ *meant* to include a different RFC limitation than he assessed. As the Commissioner states, Claimant attempts to manufacture a conflict that simply does not exist.

Therefore, the undersigned **FINDS** that the ALJ's RFC assessment that Claimant was restricted to no concentrated exposure to extreme heat and extreme cold is supported by substantial evidence.

### B. SSRs 82-62 and 004p

Turning to Claimant's primary challenge to the Commissioner's decision, Claimant contends that the ALJ failed to comply with SSR 82-62 before determining that Claimant could return to his past job as a security guard. (ECF No. 10 at 6). Claimant further states that the ALJ failed to comply with SSR 00-4p because he did not resolve an apparent conflict between the VE's testimony and the DOT. (*Id.* at 7). Specifically, Claimant states that the ALJ did not ask the VE to explain, nor did the ALJ himself explain, "how an individual performing work as a security guard could avoid exposure to extreme cold and extreme heat when the position required the individual to be frequently exposed to weather conditions, which legitimately would include temperature extremes." (*Id.* at 6-7).

Under the fourth step of the sequential evaluation process, the ALJ must determine a claimant's RFC, and in turn ascertain whether the claimant is capable of performing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is "work that [a claimant has] done within the past 15 years, that was

substantial gainful activity, and that lasted long enough for [the individual] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1).

Social Security Ruling 82-61 and Social Security Ruling 82-62 both provide guidance as to how the ALJ determines whether a Claimant is capable of doing past relevant work. Social Security Ruling 82-61 cautions that "finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982). Instead, the ALJ must determine if "the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it," or in the alternative "if the claimant cannot perform the excessive functional demands and/or job duties as actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy." *Id.* at *2. If so, then the claimant should be found "not disabled." *Id.*

Under Social Security Ruling 82-62, in order to find that a claimant can perform a past relevant job, the ALJ's decision "must contain among the findings the following specific findings of fact: (1) A finding of fact as to the individual's RFC. (2) A finding of fact as to the physical and mental demands of the past job/occupation. (3) A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62, 1982 WL 31386, at *4 (S.S.A. 1982); *see also Harris v. Secretary, Dep't of Health and Human Servs.*, No. 88-3113, 1989 WL 7013, at *2 (4th Cir. 1989) (holding that the ALJ "must determine precisely the activities involved in the claimant's former job or activities and the activities that the claimant is capable of performing"). SSR 82-62 further instructs that "[t]he claimant is the primary source for vocational documentation,

and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3. Thus, the ALJ must engage in careful appraisal of:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

*Id.* "The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." *Id.* Furthermore, "an ALJ's duty to further develop the record concerning a claimant's past relevant work arises when the ALJ is alerted by the record to the presence of an issue on the subject of past relevant work." *Adams v. Colvin*, No. 2:13–cv–00019–FDW–DSC, 2014 WL 1713775, at *8 (W.D.N.C. May 1, 2014) (quoting *Floyd v. Astrue*, No. 3:10-cv-474, 2011 WL 4946311, at *4 (W.D.N.C. Jun. 6, 2011)).

In the present matter, the ALJ solicited testimony from the VE regarding Claimant's vocational profile at Claimant's administrative hearing. (Tr. at 576-77). The VE testified that Claimant's past work as a security guard was a light exertional level job with a standard vocational preparation rating of 3 and a representative DOT number of 372.667-034. (Tr. at 577). The ALJ then questioned the VE if someone of Claimant's age, education, work history, and RFC could perform such job and the VE answered affirmatively. (*Id.*). The VE explained that a person with such characteristics and limitations could not perform Claimant's prior job as he described having performed it

because Claimant stated that his job required some climbing. Nevertheless, the ALJ confirmed that such a person could perform the job as it was described in the DOT and as it was generally performed in the national economy. (*Id.*). The ALJ's reliance on the vocational expert's testimony satisfied the mandate of SSR 82-62. *See Thompson v. Astrue*, 442 F. App'x 804, 807 (4th Cir. 2011) (holding that the ALJ made the required findings regarding the physical and mental demands of the claimant's past work by asking the VE about the nature of the previous work to which the expert testified as to the skill and exertional levels of the position); *Gunnoe v. Colvin*, No. 2:15-CV-12145, 2016 WL 5346956, at *5-7 (S.D.W. Va. Sept. 23, 2016) (stating that the "ALJ need not describe the physical and mental demands of a claimant's past work himself where he relies on the testimony of a vocational expert" and finding that the ALJ "substantially complied with the procedures set forth in SSR 82-62" by relying on the VE's classification of the claimant's past work and testimony that a hypothetical person of Claimant's age, education, work history, and RFC could perform that job) (collecting cases).

Claimant relies on this Court's ruling in *Koch* to support his contention that the ALJ did not make the required finding of fact as to the physical and mental demands of Claimant's past work as required by SSR 82-62. In *Koch*, the ALJ concluded that the claimant, who was limited to light level work, could return to her past relevant job as a cashier. *Koch*, 2014 WL 2589590, at *28. However, the claimant described her past job as a deli cashier, which required her to do more than run a register, such as requiring her to lift gallons of water, coolers, and ice bags, as well as carry food items, serve food, stock shelves, sweep, and mop. *Id.* The VE indicated that the work of a deli prep worker, deli stock clerk, and cook were all considered medium exertional work and the job of a cleaner or janitor was light to medium work. *Id.* Therefore, remand was necessary in *Koch* for the

ALJ to address the physical and mental demands of the claimant's past work and determine if her light level RFC would permit her to return to that job. *Id. Koch* simply has no application in the instant matter. *See, e.g., Gunnoe*, 2016 WL 5346956, at *7 n.8 (distinguishing *Koch*).

Next, Claimant asserts that the ALJ failed to comply with SSR 00-4p at step four of the sequential evaluation. SSR 00-4p requires an ALJ to "inquire, on the record" whether a vocational expert's testimony conflicts with the DOT. 2000 WL 1898704, at *2. In addition, "[w]hen there is an apparent unresolved conflict between [vocational expert] … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." *Id.* Ultimately, SSR 00-4p requires an ALJ to "resolve" any such conflict "before relying on the [vocational expert] … evidence to support a determination or decision about whether the claimant is disabled." *Id.*

Claimant fails to show any unresolved conflict between the VE's testimony and the DOT. The ALJ's hypothetical included no concentrated exposure to extreme cold or heat. (Tr. at 577). The security guard position job that the VE identified likewise requires no exposure to extreme cold or  heat. DOT 372.667-034, 1991 WL 673100. Claimant notes that the position requires frequent exposure to weather conditions, and he questions how it is possible that the person doing the job could avoid extreme cold and heat when being frequently exposed to weather. (ECF No. 10 at 6-7). However, as Claimant is well aware, such conditions are expressly considered separately under the DOT and Agency policy. DOT 372.667-034, 1991 WL 673100; POMS DI 25001.001(A)(22), DI 25001.001(A)(26), DI 25001.001(A)(27). Extreme heat and cold specifically refer to non-weather related conditions. *Id.* Therefore, there was no conflict between the VE's testimony and the DOT for the ALJ to resolve.

The undersigned **FINDS** that the ALJ complied with SSRs 82-62 and 004p, and the ALJ's step four determination that Claimant could return to his past relevant work as a security guard is supported by substantial evidence.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 10); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 11); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  August 6, 2019

Cheryl A. Eifert
United States Magistrate Judge

23